Melvin A. BROWN, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

No. 18274.

United States Court of Appeals
District of Columbia Circuit.

Argued May 22, 1964.

Decided June 18, 1964.

---

Mr. Max Barash, Washington, D. C., for appellant.

Mr. S. Billingsley Hill, Attorney, Department of Justice, with whom Asst. Atty. Gen. Ramsey Clark and Messrs. Roger P. Marquis and Thomas L. McKevitt, Attorneys, Department of Justice, were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Under Section 17 of the Mineral Leasing Act of 1920, as amended in 1946, 60 STAT. 951, 30 U.S.C. § 226 (1958), the Secretary of the Interior is authorized to lease for oil and gas public lands believed to contain oil and gas which are not within any known geological structure of a producing oil or gas field. The Act provides that "the person first making application for the lease who is qualified to hold a lease under this Act shall be entitled to a lease of such lands without competitive bidding."

Section 27 of the Mineral Leasing Act, as amended in 1954, 68 STAT. 648, 30 U.S.C. § 184 (1958), included the following:

"* * * No person, association, or corporation, except as herein provided, shall take or hold at one time oil or gas leases exceeding in the aggregate forty-six thousand and eighty acres granted hereunder in any one State * * *."

This provision was in effect on the critical dates in 1960, to which reference will be made later in this opinion.

In January, 1959, the Secretary of the Interior amended 43 C.F.R. 192.3 to provide that the foregoing statutory 46,080-acre limitation on oil and gas leases which may be held in one state includes acreage covered in applications for leases or offers to lease, as well as leases actually issued. The Secretary also introduced into the regulation the following (24 Fed.Reg. 281):

"(e) (2) If any person holding or controlling leases or interests in leases only, or applications or offers for leases only, or both leases or interest in leases and applications or offers, below the acreage limitation provided in this section, files an application or offer, or a group of applications or offers (filed simultaneously), which causes him to exceed the acreage limitation, the application or offer, or group of applications or offers, causing the excess holding, will be rejected in its entirety."

Prior to May 23, 1960, the appellant, Melvin A. Brown, held oil and gas leases on 9,551.57 acres in the public domain in Wyoming, and had filed five applications for leases on 3,720 acres in that state. Also prior to May 23, 1960, drawings were held with respect to the 3,720

acres,[1] as a result of which the Secretary's Bureau of Land Management determined that appellant was not the first person making application for leases on 3,050.19 acres of the total acreage of 3,720 for which he had applied, but that he was the first applicant for leases on 669.81 acres. Final action pursuant to this determination was not taken before May 23, 1960, but thereafter leases were issued to others covering 3,050.19 acres and to appellant covering 669.81 acres.

On May 23, 1960, the appellant filed 30 applications for oil and gas leases on 35,614.1 acres of public land in Wyoming. The Cheyenne land office, by a decision of August 15, 1960, rejected Brown's applications for leases on 35,614.1 acres because those applications "caused your chargeable acreage of interests in oil and gas leases, or offers to lease, to exceed 46,080 acres of Public Domain land in the State of Wyoming." Appeals to the Bureau of Land Management and to the Secretary of the Interior having been unsuccessful, Brown sued in the United States District Court for a declaration that Section 27 of the Mineral Leasing Act prescribing a limitation of 46,080 acres of oil and gas leases which may be held by one person in one state does not include applications for leases or offers to lease; and that the Secretary's regulation that the statutory limitation of 46,080 acres includes applications for leases as well as leases is invalid. He prayed that the Secretary be directed to issue noncompetitive oil and gas leases to him with respect to those portions of the 35,614.1 acres applied for with respect to which drawings had determined that he was the first qualified applicant. On consideration of cross motions for summary judgment, the District Court granted that of the Secretary of the Interior. This appeal followed.

When Brown offered to lease 35,614.1 acres on May 23, 1960, he already held leases in Wyoming on 9,551.57 acres and had been drawn as the first qualified applicant for leases on 669.81 acres of the 3,720 acres for which he had already applied. (Others had been determined to be the first qualified applicants for the remaining 3,050.19 acres.) Thus the 9,551.57 acres under lease and the 669.81 acres for which he was the first qualified applicant, made him chargeable with a total of 10,221.38 acres. When the acreage applied for May 23, 1960,—35,614.1—is added to the previous total of 10,221.38 acres, the new total is 45,835.48. This is of course within the statutory limitation of 46,080 acres, even under the Secretary's regulation providing that applications for leases, as well as leases, are to be included in computing the statutory maximum.

The Secretary contends that on May 23, 1960, Brown was chargeable with the entire 3,720 acreage for which he had previously applied, even though a drawing had already determined that he was not the first qualified applicant with respect to 3,050.19 acres of that total. Manifestly, charging Brown with the 3,050.19 acres as to which he was unsuccessful in the drawing increased his acreage to 13,271.57; and the addition thereto of the 35,614.1 acres applied for May 23, 1960, caused the total acreage held and applied for to exceed 46,080.

The Secretary seeks to justify his action by pointing out that Brown's application for 3,720 acres was still pending on May 23, 1960, although he had already been found to be the first qualified applicant as to only 669.81 acres of that total. He notes that Brown did not withdraw his application as to the 3,050.19 acres as to which he was unsuccessful, and that something might have happened to disqualify the applicants for that acreage who had prevailed over him, so that it was possible that he might eventually be the first qualified applicant for it.

Thus, the effect of the Secretary's ruling is that all unsuccessful applicants are chargeable with the acreage they applied for—no matter how many had applied

---

I. 43 C.F.R. 191.10(a) is as follows:
"Where applications or offers received by mail or filed over the counter at the same time are in conflict the right of priority of filing will be determined by public drawing in the manner provided in § 295.8(b) of this chapter."

for the same acreage—until leases are actually issued to the successful applicants, unless the unsuccessful applicants withdraw their applications.

This seems to us to be a ruling which is unjustified by the statute or the regulation and which accordingly must be rejected. Under what we hold is the proper interpretation of the Secretary's regulation, Brown was chargeable with the 9,551.57 acres he held under lease and the 669.81 acres for which he was the first qualified applicant, with the result that his applications for 35,614.1 acres did not increase his acreage beyond the limit of 46,080 acres.

As we hold that the Secretary erred in computing the acreage properly chargeable to the appellant under his regulation, we do not reach the question whether the regulation enlarged the statute and so is invalid.

The judgment of the District Court will be reversed and the cause remanded for the entry of judgment in favor of the appellant as indicated in this opinion.

It is so ordered.